No. 13,131.

DILLIARD v. WILSON.
(32 P. [2d] 263)

Decided April 23, 1934.

Messrs. Lee, Doud, Griffith & Parriott, for plaintiff in error.

Mr. Edward V. Dunklee, Mr. Carl Cline, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

On February 20, 1931, Joseph Wilson, defendant in error, filed this action as plaintiff against Kathryn Dilliard, to recover for services rendered as architect. On trial to a jury, verdict was returned for Wilson, judgment was entered thereon in the sum of $3,750, and the defendant, Dilliard, brings error. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

On December 30, 1929, the defendant was the owner of five lots at the corner of 19th avenue and Lincoln street, Denver, Colorado. The improvements thereon were old. The property was encumbered in the sum of $12,500, which was about all it was worth. Defendant advertised for money with which to pay delinquent taxes, for which she proposed to give a second mortgage. One Rodewald

answered the advertisement in person and discouraged the idea of the second mortgage and suggested that it was a fine location for a modern apartment house and assured her that the money could be raised for that purpose. He told defendant that she needed a good architect and that he would bring one out to her, whereupon he took plaintiff out and introduced him to defendant. After several visits to defendant, the plaintiff advised her to build an eight-story apartment house at an approximate cost of $550,000. Defendant says she told him she had no money with which to enter into such a grand undertaking, and says further that plaintiff insisted that all matters of finance be left to him. This is disputed by plaintiff. The following contract, prepared by plaintiff, was then entered into between plaintiff and defendant:

"Agreement for Architect's Services.

"This Agreement made this 30th day of December, A. D. 1929, by and between Joseph Wilson, Architect, as party of the first part, and Kathryn S. Dilliard, as party of the second part, Witnesseth:

"That the said party of the first part agrees to make complete plans and specifications for an eight (8) story apartment hotel building, to be built on Lots thirteen (13), Fourteen (14), Fifteen (15), Sixteen (16) and Seventeen (17), Block Thirty-two (32) Brown's Addition, being the Northeast (N. E.) corner of Nineteenth (19th) Ave., and Lincoln Street, in the City and County of Denver, and State of Colorado, and superintend the construction of the building by having an expert on the job, and also, by personal over-sight until completion, as supervising Architect.

" 'The Plans' shall consist of Floor Plans and Elevations, Sections, Engineering Plans and Details, and General Details and Illustrations of the work.

"Pencil sketches shall first be made and submitted to the owner for approval so that changes or modifications suggested may be made before tracings are made. The completed plans shall be blue-printed in as many com-

plete sets as necessary for figuring and for the different branches of the building trades.

"Said first party also agrees to make complete engineering plans and specifications for the steam heat. All the above work shall be done in consideration of a fee of Four (4%) per cent of the total cost of the building completed, and agrees to complete said plans on or before March 1st ,1930.

"To be paid as follows: When the plans are completed Three Hundred Dollars ($300.00) shall be paid and when the building is financed and the money available ,the balance shall be paid in installments as the work progresses.

"And the said second party agrees to pay to the said first party Four per cent (4%) of the cost of said building completed, and at the times herein before mentioned.

"In witness whereof the parties have hereunto set their hands, this third day of January, A. D. 1930.

"Joseph Wilson, First Party.
"Second party Kathryn S. Dilliard
Edmund Dilliard."

It is to be here noted that the contract is silent as to who was to finance the undertaking.

Plaintiff prepared a set of plans and presented same to defendant about March 1, 1930, and received from defendant $250, a part of the $300 specified in the contract. At this same time defendant signed an application to Rodewald for a $550,000 loan which she claims she made at the request of plaintiff so that the enterprise could be financed. After this date, no financing having been arranged and the property having been sold for taxes, defendant on August 16, notified plaintiff that his services were no longer required, and tendered him $50 as the balance due under the contract. Thereafter, on February 20, 1931, plaintiff filed his complaint herein, consisting of two causes of action. The first set up the contract and alleged an abandonment by defendant. The second was in quantum meruit, alleging the services per-

formed to be worth $8,000 and prayed for judgment in that amount less $250, the amount already paid.

Defendant answered, admitting the making of the agreement and payment of $250 thereon, alleged the tender of $50, as full payment for services, and then denied all other allegations of the first cause of action. For second and further defense, it is alleged that plaintiff made false statements and representations to induce defendant to enter into said contract, to the general effect that he knew where the money could be obtained to finance the building, and that that would be the least of his troubles, well knowing that the building then on said premises would have to be torn down; and that the property was not worth much more than the encumbrance, and further that the apartment house was never constructed; that the building was never financed in any part and that plaintiff abandoned the financing of the undertaking.

For a third and further defense, it is alleged that plaintiff represented that the apartment house would cost approximately $550,000, and that he agreed with defendant that if she would sign the contract herein set out, that he would finance the building, and that in consideration of such promise, defendant did sign the agreement and in pursuance thereof, plaintiff induced the defendant to make application for a loan of $550,000, to one Rodewald, to whom she agreed to pay a commission of $11,000 and other small items of expense; further that the plaintiff failed to perform his agreement to finance the building; that he abandoned the financing and building, and that said Rodewald likewise failed and refused to secure the loan for which application had been made, and for these reasons the construction of the building was never commenced.

Plaintiff's replication denied all new matter in defendant's answer. At the conclusion of plaintiff's case, according to the testimony of plaintiff's counsel given at the trial of the attachment, he abandoned the first cause

of action, and stood on quantum meruit. Plaintiff filed an affidavit in attachment which was amended after the trial of the main issues, and upon trial of the attachment, the court directed a verdict in favor of plaintiff.

Defendant filed a motion for a new trial which was overruled by the court. We believe the motion should have been sustained and a new trial granted.

The real controversy between the parties seems to be relative to the matter of who was to finance the proposed undertaking. On that subject, the contract itself is silent. The defendant strenuously contends that the agreement is ambiguous, that it does not fully set out the agreement of the parties and thereby comes within the rule permitting the introduction of parol evidence to show the real intent of the parties, and that such evidence would not vary or alter the terms of the written instrument. From a careful examination of the record herein, we find that such evidence was offered by the defendant and admitted by the court. We find no refusal by the court to admit any part of such evidence in support of the affirmative allegations of defendant's third and further defense. All matters raised by the complaint and answer, were fully before the court and jury, and as to all matters, except the verbal agreement relative to the financing of the undertaking, were submitted to the jury under proper instructions. As to this matter, the defendant tendered certain instructions and requested the court to charge the jury upon that theory of the defense which theory had support in the evidence. The requested instructions were as follows:

"Instruction No. 1. Where the terms of a written contract are ambiguous or of a doubtful meaning, in determining the true understanding or intent of the parties you may take into consideration which of the parties drew the contract and words of doubtful meaning may be construed most strongly against the party who drew the same."

"Instruction No. 2. Where the terms of a written con-

tract are ambiguous or of a doubtful meaning, the subsequent conduct of the parties acting under the contract may be considered by you to show the understanding and intent of the parties at the time the contract was entered into.''

''Instruction No. 3. You are instructed that if you find that the defendant was not in default in not financing the apartment house, and that she was not to finance the same; and if you further find that the plaintiff was to finance the same, and that more than a reasonable time for such financing had elapsed at the time the letter, plaintiff's Exhibit W, dated August 18, 1930, was sent by defendant to plaintiff, then your verdict should be for the defendant.''

By the refusal of the court to give the instructions requested, the charge to the jury stood as excluding from its consideration, the contentions of the defendant as to a material issue in support of which evidence had been introduced.

The contract between the parties relative to the employment of plaintiff is rather plain and unambiguous so far as it tends to deal with that particular question, but from a consideration of all the circumstances of the case, it is apparent that as an instrument purporting to set out the full agreement of the parties, it is incomplete. It requires, in the mind of a reasonable person, no stretch of the imagination to know from the record that the defendant was an elderly woman of meager circumstances, unable to pay taxes on the property, with but a small equity, if any at all, in the property; that these facts were known to the plaintiff; and that some agreement or understanding concerning the financing of a half million dollar undertaking was discussed and determined upon. The agreement, with no mention of this important item, was drawn by the plaintiff, and any ambiguity, uncertainty or lack of fullness, must rightfully be construed against the maker. The meaning and the purpose of the agreement is certainly open to conjecture and the jury

should have been placed, by proper instructions on that particular question, in a position as nearly as possible to that of the contracting parties, so that they could properly determine the intention of the parties as well as the interpretation of the incomplete contract.

The abandonment of the first cause of action by the plaintiff, and his position of a stand upon quantum meruit, opened the door for the admission of what could have been otherwise considered as parol evidence varying the terms of a written contract. The defendant stood upon the contract as written, by which she was not obligated to finance the undertaking. Had the contract, as written, remained a part of plaintiff's case, it would not have furnished him a cause of action against defendant as to anything beyond the sum of $300. Any balance, ever to become due, depended upon the final financing and completion of the building and at no other time. When plaintiff abandoned his first cause of action on the contract, he abandoned the very basis for a claim on quantum meruit, because the contract specifically fixed the limit of his compensation in the event the undertaking was never carried forward.

The refusal of the court to give the requested instructions was reversible error and was sufficient ground for the granting of a new trial.

The judgment in the attachment was predicated upon the judgment in the main case, and it follows that the attachment should be dissolved.

The judgment is reversed and remanded with instructions to proceed in harmony with the views herein expressed.

Mr. Chief Justice Adams and Mr. Justice Burke concur.